UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:  Chapter 7

LaJeff Lee-Percy Woodberry,  Case No. 18-46856

    Debtor.  Hon. Phillip J. Shefferly

_____/

## OPINION DENYING DEBTOR'S MOTION TO CONVERT CASE TO CHAPTER 13

### Introduction

This matter is before the Court on a pro se individual debtor's motion to convert his Chapter 7 case to Chapter 13. The Chapter 7 trustee and the United States Trustee object. For the reasons explained in this opinion, the Court will sustain their objections and deny the debtor's motion.

### Jurisdiction

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and(O) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a).

### Facts

The following facts are taken from the record in this case and related adversary proceedings, and are not in dispute.

The debtor in this case is LaJeff Lee-Percy Woodberry ("Debtor"), a retired

police officer who also served in the United States military. The Debtor is married to Yumi Yoo Woodberry ("Yumi"). They have six children and reside at 18283 Muirland St., Detroit, Michigan ("Muirland Property"), a single family home that the Debtor purchased at a foreclosure sale in 2012.

Sometime in 2016, Ramco-Gershenson Properties, L.P. ("Judgment Creditor") filed a lawsuit ("State Court Case") in the 35th District Court for the State of Michigan ("State Court") against the Debtor and three other defendants to collect a debt arising out of a lease of commercial premises for a hair salon in which the Debtor had an interest. On June 8, 2017, after a trial, the State Court entered a judgment ("Judgment") against the Debtor in the amount of $10,121.45. On February 15, 2018, after a hearing, the State Court granted a motion for attorney fees and entered an order ("Attorney Fee Award") against the Debtor in the amount of $14,911.48. The Debtor did not pay either the Judgment or the Attorney Fee Award.

On May 9, 2018, the Debtor filed a pro se Chapter 7 petition. The Debtor's schedules list total assets of $4,125.00 and total liabilities of $111,373.62. The Debtor's schedules list his monthly income at $3,020.42, all from disability retirement, and Yumi's monthly income at $3,464.75, all from her employment as the office manager for Family First, L.L.C. ("Family First"), which owns and operates a hair salon. The Debtor's schedules list combined net monthly income of $45.23 for his household, after payment of monthly expenses. The Debtor's statement of

financial affairs states that in the year before his bankruptcy case he did not make any payments or transfers on account of a debt to any insiders. The Debtor's statement of financial affairs also states that in the two years before his bankruptcy case he did not make any gifts with a value of more than $600.00 to any person, and did not make any transfers of property to anyone other than in the ordinary course of business.

At the § 341 meeting on July 18, 2018, in response to questions by Mark H. Shapiro, the Chapter 7 trustee ("Trustee"), the Debtor testified about a number of actions he took to move his assets before he filed his bankruptcy case, contrary to what he disclosed in his statement of financial affairs. The Debtor testified that on February 16, 2018, the day after the State Court entered the Attorney Fee Award, he recorded a quit claim deed ("Quit Claim Deed") transferring the Muirland Property to Yumi for $1.00. The Debtor executed the Quit Claim Deed on January 28, 2013, but had not previously recorded it. When asked why he now recorded it on February 16, 2018, several years after execution, the Debtor explained that he did so because "I think my wife is very worried about the illegal tactics of [the Judgment Creditor] and the attorney."

The Debtor also testified that after the Judgment, but before filing his bankruptcy case, he had received two large payments, both of which he "gave" to Yumi. First, the Debtor received in 2017 a lump sum disability payment of $115,790.06 from the Police and Fire Retirement System of the City of Detroit.

Second, the Debtor received in January, 2018 an annuity payment of $55,048.18 from AXA Equi-Vest. Finally, the Debtor testified that at the time of the Judgment he owned a membership interest in Family First, but in 2018 he took his name "off" of the ownership because he "was being harassed" by the Judgment Creditor.

The Debtor's bankruptcy case has been marked by extensive and acrimonious litigation.

When the Debtor filed an amendment to schedule C to claim a homestead exemption in the Muirland Property, the Trustee objected, arguing that the Debtor cannot claim an exemption in property that he does not own. Because the Debtor had executed and recorded the Quit Claim Deed before he filed his bankruptcy case, the Trustee argued that Yumi was the sole owner of the Muirland Property. The Court sustained the Trustee's objection.

While the Trustee's objection to exemption was pending, the Trustee filed an adversary proceeding against Yumi under §§ 544, 548 and 550 of the Bankruptcy Code. The Trustee's complaint alleges that the Debtor fraudulently transferred the Muirland Property to Yumi, for no consideration and while he was insolvent, to prevent the Judgment Creditor from attaching it. The Trustee's complaint further alleges that the Debtor fraudulently transferred numerous payments to Yumi to prevent the Judgment Creditor from satisfying the Judgment and Attorney Fee Award out of such amounts. Among the transfers alleged are the payments from the

Retirement System and from AXA Equi-Vest. The Trustee's complaint seeks to avoid all of these transfers and recover them for the bankruptcy estate. Finally, the Trustee's complaint alleges that the Debtor's removal of his name as an owner of Family First constitutes a fraudulent transfer of his ownership interest to Yumi.

Until recently, Yumi has defended the Trustee's adversary proceeding pro se. Although the Court has explained to the Debtor that he cannot represent Yumi because he is not an attorney, the Debtor has continually tried to speak on her behalf at the hearings held by the Court. Yumi does not dispute the dates that the Quit Claim Deed was made and recorded, and she does not dispute that she did not give the Debtor any payment or other consideration for it. Further, she does not dispute that she received the payments from the Retirement System and AXA Equi-Vest on the dates alleged by the Trustee, or that the Debtor removed himself as an owner of Family First, which she now owns. Yumi filed a motion for summary judgment, but her motion was denied and the adversary proceeding is scheduled for trial in January, 2020. Yumi has now hired an attorney to represent her in the adversary proceeding.

The United States Trustee ("UST") filed a separate adversary proceeding under § 727(a) of the Bankruptcy Code. The UST's complaint alleges that the Debtor should not be granted a discharge because he has concealed, destroyed, falsified or failed to keep recorded information, has knowingly and fraudulently withheld information from the Trustee, and failed to explain satisfactorily a loss of assets to

-5-

18-46856-pjs    Doc 89    Filed 08/21/19    Entered 08/21/19 17:46:12    Page 5 of 20

meet his liabilities. The Debtor is defending this adversary proceeding pro se. The Debtor filed a motion for summary judgment, but his motion was denied and the adversary proceeding is now scheduled for trial in November, 2019.

Several months after the Debtor filed his case, and at a time when the various contested matters and adversary proceedings were heating up, the Trustee suggested that this case might benefit from mediation. The Court was receptive to the Trustee's suggestion because of the complexity and nature of the disputes in this case, and because the Debtor insists on appearing pro se, despite the Court urging the Debtor on multiple occasions to hire an attorney to represent him. After the Court explained the mediation process in detail to the Debtor, the Debtor agreed to the mediation. So did Yumi, the defendant in the Trustee's adversary proceeding. The UST agreed too. With the consent of the parties, the Court appointed a very reputable, skillful and experienced mediator. Also with the consent of the parties, the Court held the adversary proceedings and other contested matters in abeyance to allow the mediator enough time to work through the issues to try to reach a global settlement. From time to time, the mediator requested more time to complete the mediation, and the Court granted those requests. Unfortunately, the mediation was not successful.

Once the mediator advised the Court that the mediation was concluded, the Court placed back on its docket the pending adversary proceedings and contested matters. In the adversary proceeding brought by the Trustee, the Court scheduled a

hearing for June 26, 2019 on cross-motions for summary judgment.

On June 25, 2019, one day before the hearing, the Debtor filed a motion ("Motion") (ECF No. 77) to convert his case to Chapter 13. The Motion is not accompanied by a Chapter 13 plan, nor by any amendments to the Debtor's schedules. The Motion alleges that the Debtor's "household income and other available resources will permit him to propose and confirm a feasible chapter 13 plan."

On July 1, 2019, the Trustee filed an objection ("Trustee Objection") (ECF No. 78). On July 11, 2019, the UST also filed an objection ("UST Objection") (ECF No. 82). On July 15, 2019, the Debtor filed a reply ("Reply") (ECF No. 84). At the hearing on the Motion on July 19, 2019, when asked by the Court what his Chapter 13 plan would provide, the Debtor answered that "it would be to use any assets I've got available to pay off the debt. I also talked to my wife who has a home and we're planning on refinancing the home to pay off the debt." The Debtor stated that if the Motion is granted, he would hire an attorney to handle his Chapter 13 case. The Court took the Motion under advisement and is now ready to rule on it.

### **Applicable Law**

Section 706(a) of the Bankruptcy Code states that a "debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 . . . at any time" if the case has not previously been converted from one of those chapters. Section 706(e) states that "a case may not be converted to a case under another chapter of this title unless the

-7-

18-46856-pjs    Doc 89    Filed 08/21/19    Entered 08/21/19 17:46:12    Page 7 of 20

debtor may be a debtor under such chapter." Section 109(e) states who may be a debtor under Chapter 13: "[o]nly an individual with regular income" who owes, on the date of the bankruptcy petition, debts that are less than the specific amounts set forth in that subsection.

The Trustee and the UST do not dispute that the Debtor is an individual with regular income, whose case has not previously been converted, nor do they argue that the Debtor's debts exceeded the limits of § 109(e) when he filed his petition.[1] Instead, they argue that the Debtor should not be able to convert his case to Chapter 13 because he has not acted in good faith, both prior to and after filing his petition, including filing the Motion.

Both the Trustee Objection and the UST Objection rely for legal authority on Marrama v. Citizens Bank of Massachusetts, 549 U.S. 365 (2007). Prior to Marrama, long settled case law held that a Chapter 13 petition could be dismissed for lack of good faith. See Alt v. United States (In re Alt), 305 F.3d 413, 421 (6th Cir. 2002). What was not settled was whether a lack of good faith could also be the basis to deny a § 706(a) motion to convert to Chapter 13, or whether § 706(a) gives a debtor an

---

[1] As of May 9, 2018, when the Debtor filed this case, § 109(e) set limits of $394,725 for noncontingent, liquidated, unsecured debts, and $1,184,200 for noncontingent, liquidated, secured debts. The amounts listed on the Debtor's schedules do not exceed these limits, but the total of the filed proofs of claim does exceed the limit for unsecured debts.

-8-

absolute right to convert from Chapter 7 to Chapter 13. In the Sixth Circuit, <u>Copper v. Copper</u> (<u>In re Copper</u>), 426 F.3d 810 (6th Cir. 2005) rejected the notion that a debtor has a one time absolute right to convert regardless of the circumstances and held instead that because a Chapter 13 case could be dismissed for lack of good faith, "it is logical to conclude that the conversion from chapter 7 to chapter 13 may also be denied in the absence of good faith." <u>Id.</u> at 815 (internal quotation marks and citation omitted). In 2007, the Supreme Court in <u>Marrama</u> came out the same way, resolving a circuit split, rejecting the absolute right argument and holding that "nothing in the text" of the statute "limits the authority of the court to take appropriate action in response to fraudulent conduct by the atypical litigant who has demonstrated that he is not entitled to the relief available to the typical debtor." 549 U.S. at 374-75. Although affirming the denial of the debtor's § 706(a) motion in the case before it, the Supreme Court declined to "articulate with precision what conduct qualifies as 'bad faith' sufficient to permit a bankruptcy judge to dismiss a Chapter 13 case or to deny conversion from Chapter 7." <u>Id.</u> at 375 n.11.

In <u>Alt</u>, the Sixth Circuit explained that the party seeking dismissal of a Chapter 13 case has the burden of proof, and that good faith is a "fact-specific and flexible determination." 305 F.3d at 419-20. The <u>Alt</u> court noted that in determining whether a Chapter 13 plan was proposed in good faith, courts look at a non-exclusive list of factors including: (i) the debtor's income and living expenses; (ii) the duration

-9-

18-46856-pjs    Doc 89    Filed 08/21/19    Entered 08/21/19 17:46:12    Page 9 of 20

of the debtor's proposed chapter 13 plan; (iii) the circumstances under which the debts were incurred; (iv) the amount of payments offered by the debtor as indicative of the debtor's sincerity to repay the debt; and (v) the burden which administration would place on the trustee. In addition, the Alt court noted that some of the factors that are examined to determine whether a Chapter 13 plan is proposed in good faith overlap with the factors relevant to determine whether a Chapter 13 case should be dismissed for a lack of good faith, such as: (i) whether the debtor has been forthcoming with the bankruptcy court and the debtor's creditors; (ii) whether the debtor accurately scheduled the debtor's debts and property; (iii) the debtor's motive in filing the petition; and (iv) the debtor's treatment of creditors both before and after the petition was filed. Id. at 419 (citations omitted).

In Copper, the Sixth Circuit adopted the "fact-specific and flexible determination" approach of Alt and also noted that among the facts that may support a denial of a conversion motion are: (i) falsification of documents; (ii) failure to disclose assets; (iii) false representations; (iv) abuse of process; (v) pre-petition conduct; (vi) futility; and (vii) the debtor's reason for moving to convert. 426 F.3d at 814-16 (collecting cases).

## Discussion

The Trustee Objection argues that the Debtor's lack of good faith is shown by the two pending adversary proceedings, the Debtor's testimony at the § 341 meeting about recording the Quit Claim Deed to frustrate the collection actions by the Judgment Creditor, and the Debtor's failure to account for what happened to the large payments that he gave to Yumi before he filed his bankruptcy petition. The Trustee Objection further argues that if the Motion is granted, the Debtor's case will inevitably be converted back to Chapter 7 because the Debtor's schedules do not reflect an ability to fund a feasible plan, and the passage of time "while the case lingers" in Chapter 13 will unreasonably delay and prejudice the Debtor's creditors. The UST Objection makes similar arguments, and also points out that the Debtor has not filed a proposed Chapter 13 plan nor amendments to his schedules to evidence an ability to pay his creditors in a Chapter 13 case at least as much as they would receive in a Chapter 7 case.

Keeping in mind the types of facts considered relevant to good faith by <u>Alt</u> and <u>Copper</u>, there are undoubtedly many, genuine disputes over some of those facts in this case. The two adversary proceedings have yet to be tried, so it is uncertain who will ultimately prevail in those adversary proceedings. But there are also many facts, of the types considered relevant by <u>Alt</u> and <u>Copper</u>, that are not in dispute in this case. Among the undisputed facts are the following.

    1. <u>Hiding assets from the Judgment Creditor pre-petition.</u>

The Debtor admits that, after the Judgment Creditor filed the State Court Case and obtained the Judgment, he "gave" two lump sum payments to Yumi, one in the amount of $115,790.06 and the other in the amount of $55,048.18, without receiving anything from her in exchange for such payments.

The Debtor admits that, one day after the Judgment Creditor obtained the Attorney Fee Award, he recorded the Quit Claim Deed transferring the Muirland Property for Yumi, for no payment or other consideration, because Yumi was "worried" about the actions of the Judgment Creditor.

The Debtor admits that, early in 2018 after entry of the Judgment, he took his name "off" his ownership of Family First, which owns the hair salon, because he "was being harassed" by the Judgment Creditor.

In the adversary proceeding that the Trustee filed against Yumi to avoid the transfer of the Muirland Property, Yumi does not deny either the date of recording the Quit Claim Deed or that she paid the Debtor nothing in return for the Quit Claim Deed.

2. <u>Filing inaccurate schedules and statement of financial affairs.</u>

The Debtor's statement of financial affairs does not disclose the transfer of the Muirland Property to Yumi, the payment of the two lump sums to Yumi, and the Debtor's divestment of his interest in Family First.

Even though the Debtor admits that he transferred the Muirland Property to

-12-

Yumi, the Debtor amended his schedules to claim ownership of it, valuing it at $265,000.00, and to claim an exemption in it.

       3. <u>Taking frivolous legal positions that increase litigation costs.</u>

The Debtor litigated with the Trustee over his claim of exemption in the Muirland Property despite his admitting that he did not own it.

Even though the Debtor's schedules and the proofs of claims that have been filed do not give any indication that this will ever be a surplus estate, the Debtor has brought and unsuccessfully litigated objections to proofs of claims filed by unsecured creditors, including the proof of claim filed by the Judgment Creditor.

In the UST adversary proceeding objecting to the Debtor's discharge, the Debtor unsuccessfully moved for summary judgment on the ground that the UST was barred from bringing that adversary proceeding because the UST and the Trustee are really one and the same party and the Trustee had already brought an adversary proceeding against Yumi.

After the mediation was concluded and the Court conducted a conference to discuss the scheduling of further proceedings in the UST adversary proceeding objecting to his discharge, the Debtor unsuccessfully made an oral demand for a jury trial.

       4. <u>The manner in which the Debtor has dealt</u>

<u>with the other parties to his case.</u>

The record of virtually every hearing in this case is replete with wild and unfounded accusations by the Debtor against the other parties to the case. The following are just some examples. Early on in the case, the Debtor accused the Judgment Creditor and the Trustee's attorney of acting "nefariously" together (hearing on September 7, 2018), and the Trustee of "terrorizing" the Debtor (hearing on October 12, 2018). Later in the case, the Debtor accused the Trustee of "abusing his authority, if not outright extortion," and failing to "conduct the mediation in good faith" (hearing on May 20, 2019). The Debtor also accused the Trustee's attorney of failing to do her due diligence and questioned her motivations (hearing on March 22, 2019), and further accused her of "not acting in good faith," perpetrating a "fraud," and "doing some self-serving moves to boost up her own pocket" (hearing on July 19, 2019). The Debtor also accused the mediator of "not conducting the mediation in good faith" (hearing on May 20, 2019).

### 5. <u>The Debtor's sincerity in proposing to repay creditors and ability to be successful in Chapter 13.</u>

The Motion is not accompanied by a Chapter 13 plan, nor by any amendments to the Debtor's schedules.

The only schedules ever filed by the Debtor are his original schedules I and J, which do not show any meaningful disposable income – just $45.23 per month – to commit to plan payments.

The claims register shows that claims have been filed in the aggregate amount of $424,968.33. At the hearing, when asked by the Court what the Debtor's plan might provide, the Debtor said only that he and Yumi would refinance the Muirland Property to pay the Debtor's creditors. The Debtor does not say how he would treat these claims in a Chapter 13 plan.

Apart from the feasibility requirement for any plan under § 1325(a)(6) of the Bankruptcy Code, the Debtor does not say how any plan would take into account and value any potential recoveries of the fraudulent transfers alleged in the Trustee's adversary proceeding for purposes of the best interest test of § 1325(a)(4) of the Bankruptcy Code. And the Debtor seems entirely unaware that the expenses in administering this Chapter 7 case, which the Debtor's conduct has unquestionably driven up, will also have to be reckoned with in any plan.

The Court has encouraged the Debtor on multiple occasions in the bankruptcy case and the two adversary proceedings to hire a lawyer to represent him. The Debtor stated at the hearing that he now intends to hire an attorney, but the fact remains that the Debtor has represented himself at every step in this case and the adversary

proceedings, telling the Court that he has been getting help from his brother who, the Debtor says, is an attorney.

### 6. Timing of the motion.

This case is now over a year old. During that time, the Trustee has incurred substantial costs of administration.

In fairness to the Debtor, there was a five month period of inactivity, which the Court permitted, to give all parties a full opportunity to mediate all of the issues in this case. It is unusual for the Court to hold matters in abeyance for mediation this long but the Court did so in this case largely because the Debtor was appearing pro se and the Court hoped that the mediation process would help better inform the Debtor about the legal rights and obligations of all the parties, and about the risks and rewards for the Debtor in continuing to litigate.

While the delay for the mediation should not be held against the Debtor, the fact remains that if the Debtor had truly wanted to try to repay his creditors, he could have moved to convert this case long before now, and long before the estate was saddled with substantial costs of administration.

### **Conclusion**

Congress has expressed a policy of encouraging individuals who can repay their debts to seek to do so by means of a Chapter 13 plan rather than seek to discharge of those debts in Chapter 7. Section 706(a) furthers this policy by permitting even those

individuals who initially choose Chapter 7 to later convert their case to Chapter 13 without imposing any temporal limitation on when they can do so. But, as explained in Marrama, that does not mean that an individual who chooses to file Chapter 7 will forever have the right to convert their case to Chapter 13 no matter the circumstances. Marrama makes clear that an individual's conduct before and during their bankruptcy case matters, and can even result in forfeiting the right to convert their case to Chapter 13 that § 706(a) otherwise gives them.

The undisputed facts about the Debtor's pre-petition conduct do not evidence good faith by the Debtor in dealing with his creditors or sincerity in paying his debts. The Debtor admitted in his § 341 testimony that he moved assets to keep them out of the reach of the Judgment Creditor. The undisputed facts about the Debtor's post-petition conduct do not evidence good faith either. The Debtor did not disclose on his statement of financial affairs the transfer of the Muirland Property to Yumi, or the transfers of the lump sum payments or the Family First membership interest. Because the Debtor has not filed a plan, there is no way for the Court to be able to tell whether the Debtor could ever confirm, let alone perform, any plan if the Motion was granted and this case converted to Chapter 13. The Debtor's suggestion, unaccompanied by any details, that he and Yumi could refinance the Muirland Property is not a plan, but just a way of ensuring that the Debtor and Yumi – as opposed to the Trustee – have control over the liquidation of the Muirland Property. The record does not indicate

-17-

18-46856-pjs    Doc 89    Filed 08/21/19    Entered 08/21/19 17:46:12    Page 17 of 20

that the Debtor filed the Motion out of a sincere desire to repay his creditors in Chapter 13. The timing of the Motion is best explained by the fact that the Debtor has been unsuccessful to date and is now looking to wrest control of his case from the Trustee to bring an end to the adversary proceedings.

The Debtor is very intelligent, and able to vigorously argue what he wants the Court to know. However, it is painfully obvious to the Court that the Debtor lacks even a basic understanding of bankruptcy law and bankruptcy procedure, frequently citing irrelevant legal authorities in support of his positions, as well as making the baseless allegations listed above. Simply put, the Debtor has been his own worst enemy. After losing the State Court Case, he admittedly moved his property out of the Judgment Creditor's reach. When he filed his bankruptcy case, his schedules were not accurate and he litigated frivolous issues. At every turn, the Debtor has resisted the Trustee's administration of this case even though it was he who started this entire process by seeking relief under Chapter 7. He has defended the actions brought against him by the Trustee and the UST by repeatedly accusing them, without substantiation, of bad faith and fraud. The Debtor unquestionably has the right to represent himself, but that does not mean that he may act uncivilly in his dealings with the other parties to his case. The manner in which the Debtor has dealt with those parties in his case does not suggest that the Debtor has a sincere desire to use Chapter 13 to repay his creditors.

To some extent, the Court sympathizes with the Debtor. He is a married father of six children who served his country in the military and as a police officer, and is appearing pro se. But those facts do not give the Debtor license to run his Chapter 7 case any way he sees fit, and then just convert to Chapter 13 when things do not go his way in the Chapter 7 case. A debtor's ability to get out from under the responsibilities of a Chapter 7 case that they chose to file is limited and available only to those individuals who are acting in good faith in moving to convert to Chapter 13.

Because good faith is fact specific, and requires a totality of circumstances approach, often the proper treatment of a contested motion to convert to Chapter 13 is to hold a full evidentiary hearing. However, scheduling an evidentiary hearing to resolve those facts that are in dispute in this case is unnecessary and serves no useful purpose. There are enough undisputed facts in the record, recounted above, that taken together demonstrate that the Trustee and the UST have met their burden to show that the Debtor is the "atypical litigant" described in <u>Marrama</u> "who has demonstrated that he is not entitled" seek relief under Chapter 13 because he is not acting in good faith. The Court is persuaded that the Trustee and the UST are correct: conversion to Chapter 13 is futile. If the Court grants the Motion, this case will linger in Chapter 13 and inevitably be converted back to Chapter 7 because the Debtor has not shown that he has the ability and willingness to fund a feasible plan, and all that will have

been accomplished is to allow the Debtor to frustrate the Trustee's administration of this case, resulting in more delay and prejudice to the Debtor's creditors.

The Court will deny the Motion and enter a separate order consistent with this opinion.

**Signed on August 21, 2019**

/s/ Phillip J. Shefferly
Phillip J. Shefferly
United States Bankruptcy Judge