UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In Re:

LaJeff Lee-Percy Woodberry,                     Case No. 18-46856-jad
                                                Chapter 7
   Debtor.                                       Hon. Joel D. Applebaum
_____/


## OPINION GRANTING THE TRUSTEE'S MOTION TO APPROVE COMPROMISE AND FOR SALE OF REAL PROPERTY

### I.

### INTRODUCTION

The matter before the Court is the Trustee's Motion to Approve Compromise and for Sale of Real Property (the "Motion"). The compromise seeks to dismiss Adversary Proceeding No. 20-4366 filed against Amerisave Mortgage Corporation (the "Amerisave Adversary") in exchange for Amerisave purchasing the property located at 18283 Muirland Street, Detroit, Michigan from the estate for $150,000, subject to existing liens, claims and interests (except those filed by the Trustee or granted pursuant to an order of this Court). Debtor, LaJeff Lee-Percy Woodberry, and his wife, Yumi Yoo Woodberry, filed an objection to the Motion and requested

1

a hearing, which was held on May 5, 2021. For the reasons set forth in this Opinion, the Trustee's Motion is GRANTED.

II.

FACTUAL BACKGROUND

The underlying bankruptcy case and various attendant adversary proceedings have a long history, and all have been vigorously litigated. The facts of this particular adversary proceeding were succinctly set forth in Judge Phillip Shefferly's Order Denying Debtor's Motion to Intervene (Adv. No. 20-4366, Docket No. 46) and are summarized here.[1]

LaJeff Lee-Percy Woodberry ("Debtor") is the debtor in this chapter 7 case. He is married to Yumi Yoo Woodberry ("Yumi"). On the date of the bankruptcy petition, the Debtor and Yumi lived at 18283 Muirland Street, Detroit, Michigan ("Muirland Property"). Although the Property was at one time solely in the Debtor's name, the Debtor transferred the Muirland Property to Yumi for $1.00 before filing his bankruptcy petition. On the date of the petition, record title to the Muirland Property was solely in Yumi's name.

On August 2, 2018, the chapter 7 trustee (the "Trustee") filed adversary proceeding No. 18-4356 ("Avoidance Adversary Proceeding") against Yumi to

---

[1] On December 30, 2020, this case was reassigned to Judge Joel Applebaum following the retirement of Judge Shefferly.

2

avoid the Debtor's transfer of the Muirland Property to Yumi and to recover the Muirland Property for the bankruptcy estate. To protect the estate's interest in the Muirland Property while the Trustee prosecuted the Avoidance Adversary Proceeding, the Trustee recorded a Claim of Interest in the Muirland Property with the Wayne County Register of Deeds.

On September 9, 2020, the Court granted the Trustee's motion for partial summary judgment in the Avoidance Adversary Proceeding. The Court held that the Debtor's transfer of the Muirland Property is avoided, and the Muirland Property is recovered for the Debtor's bankruptcy estate. Debtor and Yumi appealed this ruling.

On September 11, 2020, the Trustee filed this adversary proceeding. In his amended complaint, the Trustee alleges that, despite the Claim of Interest on the Muirland Property and while the Avoidance Adversary Proceeding was pending, the Debtor and Yumi borrowed $192,000.00 from Amerisave Mortgage Corporation and secured repayment by granting Amerisave a mortgage ("Mortgage") on the Muirland Property. The amended complaint seeks alternative forms of relief -- a judgment declaring that the Mortgage is void; a judgment subordinating the Mortgage to the estate's interest; avoidance of the Mortgage; or recovery of the value of the Mortgage for the benefit of the estate.

Sometime thereafter, Amerisave's counsel informed the Trustee that the Mortgage had been refinanced on June 17, 2020 and the Muirland Property was now

subject to a $301,600 mortgage. (Adv. No. 20-4366, Docket No. 1, Exhibit B). On October 26, 2020, the Trustee again amended his complaint seeking a judgment declaring the Mortgage void or avoided, subordinating the Mortgage to the Trustee's interest, or awarding a money judgment for $301,600. (Adv. No. 20-4366, Docket No. 18).

On November 16, 2020, Debtor and Yumi sought to intervene in the Amerisave Adversary. On December 10, 2020, Judge Shefferly denied Debtor's Motion to Intervene, finding that neither Debtor nor Yumi have any interest -- pecuniary or otherwise -- in the Muirland Property, much less a substantial or significant legal interest as required for intervention under Fed. R. Bankr. P. 7024.

On December 16, 2020, the Trustee filed a motion to amend the order granting the motion for partial summary judgment in the Avoidance Adversary Proceeding to include a money judgment and to dismiss the remaining counts of the complaint. (Adv. No. 18-4356, Docket No. 244). On February 16, 2021, the Court granted the Trustee's motion to amend order to include a judgment against Yumi in the amount of $200,000 and dismissing all other counts. (Adv. No. 18-4356, Docket No. 285) This judgment is now on appeal. No stay pending appeal was requested or granted.

At some point after the filing of the Amerisave Adversary, the Trustee and Amerisave entered into negotiations regarding the settlement of the Amerisave Adversary. On March 9, 2021, the Trustee filed this motion for order approving

compromise and for sale of real property. The compromise proposes the sale of the Muirland Property subject to existing liens to Amerisave for $150,000, in exchange for the dismissal of the adversary complaint. The Trustee alleges that the settlement is fair and equitable, is in the best interest of the estate, and is authorized under Fed. R. Bankr. P. 9019 and §105(a) of the Bankruptcy Code.

On March 30, 2021, Debtor and Yumi filed their objection to the Motion.[2]

III.

## LAW AND ANALYSIS

A. Motion to Approve Compromise

The Trustee has the power to compromise matters pertaining to the estate under Fed. R. Bankr. P. 9019(a) which provides, in relevant part:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise and settlement.

The Trustee's decision to settle must represent the interests of the bankruptcy estate and its creditors and is reviewed under the "business judgment rule." *See, In re Dalen*, 259 B.R. 586 (Bankr. W.D. Mich. 2001) (addressing the application of the business judgment rule with respect to the Rule 9019(a) approval of a settlement).

---

[2] Following argument on the Motion, the Court took this matter under advisement. Thereafter, Debtor and Yumi filed Debtor's Written Oral Argument Regarding Trustee's Motion for Order Authorizing Compromise with Amerisave (Docket No. 166). The Court did not authorize the filing of post-hearing briefs. Nevertheless, having reviewed the document, all of the arguments raised were addressed in this Opinion and/or in the numerous prior opinions of the Court.

Under the business judgment rule, the challenging party must establish that the course of action chosen by the fiduciary was outside the parameters of what a rational and reasonably informed businessperson might select. *See, In re Engman*, 331 B.R. 277, 289 (Bankr. W.D. Mich. 2005). The law favors compromise and not litigation. *See Fishell v. Soltow (In re Fishell)*, No. 94-1109, 1995 WL 66622, at *2 (6th Cir. Feb. 16, 1995) (*citing In re A & C Props.*, 784 F.2d 1377 (9th Cir. 1986)). The business judgment rule creates a presumption in favor of the fiduciary. *Engman*, 331 B.R. at 289.

When determining whether to approve a proposed settlement, a bankruptcy court cannot simply rubber stamp the agreement or merely rely upon the trustee's word that the settlement is reasonable. *Reynolds v. Comm'r Internal Revenue (In re Reynolds),* 861 F.2d 469, 473 (6th Cir. 1988). Rather, the Court is charged with an affirmative obligation to apprise itself of the underlying facts and to make an independent judgment as to whether the compromise is fair and equitable. *Id*. Nevertheless, the Court has significant discretion in approving settlements. *Rankin v. Lavan and Assoc., P.C. (In re Rankin)*, 438 Fed. Appx. 420, 426 (6th Cir. 2011). The Court does not need to hold a mini-trial or write an extensive opinion every time it approves or disapproves a settlement. It need only apprise itself of the relevant facts and law so that it can make an informed and intelligent decision and set out the reasons for its decision. *LaSalle Nat'l Bank v. Holland (In re Am. Reserve Corp.)*,

841 F.2d 159, 163 (7th Cir.1987). Also, the Court may accord *some* deference to the trustee's decision to settle a claim. *Johnson v. Jackson Family Television, Inc. (In re Media Cent., Inc.)*, 190 B.R. 316, 321 (E.D. Tenn. 1994).

While Rule 9019 offers no guidance on the criteria to be used in evaluating whether a compromise and settlement should be approved, the U.S. Supreme Court has set forth general factors to be considered by bankruptcy judges in determining whether a proposed settlement is fair and equitable:

> There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation.

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson (In re TMT Trailer Ferry, Inc.)*, 390 U.S. 414, 424–25 (1968). The Sixth Circuit Court of Appeals summarized how other federal courts have implemented the Supreme Court's guidance in *TMT Trailer* and set forth four factors for bankruptcy courts to consider:

> First, the probability of success in the litigation; second, the difficulties, if any, to be encountered in the matter of collection; third, the complexity of the litigation involved, and the expense, inconvenience

and delay necessarily attending it; and fourth, the paramount interest of ***creditors*** and a proper deference to their reasonable views in the premises.

*Bard v. Sicherman (In re Bard)*, 49 Fed. Appx. 528, 530 (6th Cir. 2002) (emphasis added).

Upon consideration of the *TMT* factors, the Court approves the settlement and makes the following findings.

First, as the Trustee candidly acknowledges, although the Amerisave Adversary is in its early stages and not all of Amerisave's defenses are known to this Court, it is likely that, if litigated, the Mortgage would be avoided or subordinated to the Trustee's interest. As discussed below, however, because the avoidance or subordination of the Mortgage leaves the Trustee with the task of liquidating the Muirland Property, and because there are always risks associated with litigation, the Court finds that, even with the Trustee's likelihood of success on the merits, settlement remains the most expeditious way to handle this matter and the one most beneficial to this estate.

Second, there is a strong likelihood that collection in this case will be extraordinarily difficult. The avoidance or subordination of the Amerisave Mortgage is only one small step in the Trustee's on-going quest to recover money that can be distributed to creditors. If the Trustee is successful in avoiding or subordinating the Amerisave Mortgage, he must then sell the Muirland Property. To

do that, the Trustee will either have to force the Debtor and Yumi out of the home or obtain their cooperation in allowing the Trustee to market the Property, list the Property with a broker, and insure and maintain the Property pending sale. As demonstrated by their myriad objections filed in this case and in the various adversary proceedings, the six appeals filed by Debtor,[3] and the statements made on the record during argument on this Motion, neither the Debtor nor Yumi is likely to cooperate in the Trustee's efforts to liquidate the Muirland Property. To the contrary, the Court must assume they will continue to vigorously oppose any attempts to sell or liquidate the home. Within the bounds of the law, of course, that is their right.

---

[3] *In re Woodberry*, 2020 U.S. Dist. LEXIS 54578, *1, Bankr. L. Rep. (CCH) P83,509, 2020 WL 1508604 (bankruptcy court's denial of Debtor's motion to convert), stay denied by *Woodberry v. Vara (In re Woodberry)*, 2020 U.S. App. LEXIS 28836 (6th Cir., Sept. 10, 2020), affirmed by *In re Woodberry*, 2021 U.S. App. LEXIS 8040 (6th Cir. Mich., Mar. 18, 2021).

*Vara v. Woodberry (In re Woodberry)*, 2020 Bankr. LEXIS 3598, 2020 WL 7753312 (Bankr. E.D. Mich., Dec. 29, 2020)(bankruptcy court granted Trustee's motion for denial of Debtor's discharge under 11 U.S.C. § 727(a)(3)), appeal dismissed by *Woodberry v. Shapiro (In re Woodberry)*, 2021 U.S. Dist. LEXIS 1473, *1, 2021 WL 37910 (E.D. Mich., Jan. 5, 2021) on appeal to *Woodberry, et al v. Shapiro*, No. 21-1043 (6th Cir. Filed Jan. 15, 2021)**(pending).**

*Shapiro v. Woodberry (In re Woodberry)*, 2021 Bankr. LEXIS 356, *1, 2021 WL 623708 (Bankr. E.D. Mich., Feb. 16. 2021)(order granting Trustee's motion for order dismissing counts and amending order granting Plaintiff's motion for summary judgment) on appeal to *Woodberry v. Shapiro*, No. 21-cv-10482 (E.D. Mich. Filed March 2, 2021)**(pending).**

But, as discussed below, this litigiousness has implications when analyzing the reasonableness of the sale price to Amerisave. Like the Court, any potential buyer of the Muirland Property must similarly consider the Debtor's and Yumi's recalcitrance in determining whether to make a purchase offer and at what price.

Third, the Court finds that the issues in this adversary proceeding mainly involve statutory construction and would likely be decided on summary judgment motions. That being said, any additional value brought into the estate by litigation would be significantly diminished by the costs of further litigation to obtain a judgment in the Amerisave Adversary and in litigation against the Debtor and Yumi to, among other things, market and sell the Muirland Property. To date, the Trustee has incurred over $80,000 in professional fees, the overwhelming majority of which was incurred litigating with the Debtor and Yumi in multiple actions and in multiple courts. Currently, the Trustee is defending two appeals brought by the Debtor and Yumi, one at the District Court, Case No. 21-cv-10482, and one at the Sixth Circuit, Case No. 21-1043. Professional fees continue to accrue. Settling this adversary proceeding and ending further litigation against Amerisave will necessarily create a savings to the estate as any costs of litigation with Debtor and Yumi concerning the property and all marketing and sale costs will now be borne entirely by Amerisave. For these reasons, this Court finds that the complexity of the litigation involved, and

the expense, inconvenience and delay necessarily attending the litigation, favors the compromise in this case.

Fourth, this Court finds that the settlement serves the interest of creditors and gives deference to their views. Four creditors have filed claims in this case. None of them have objected to the Motion.[4] The two largest claims are those of creditors Dyck-O'Neal for $71,013.72 (Proof of Claim, No. 2) and Ramco-Gershenson ("Ramco") for $23,733.30 (Proof of Claim, No. 4). Dyck-O'Neal's claim dates back 15 years to 2006 when it granted the Debtor and Yumi a mortgage on property. (Proof of Claim, No. 2.) Ramco has been pursuing the Debtor for collection since before 2016 when it filed a lawsuit against the Debtor and three others to collect a debt arising out of a lease of commercial premises. (Docket No. 89, Opinion Denying Conversion.)

These creditors are keenly aware of the difficulties associated with collecting money from the Debtor. Even in this case, the Debtor objected to their claims. (Docket Nos. 63 and 64) The Court denied the objections based on lack of standing and lack of substantive merit. (Docket Nos. 74 and 75.) Notwithstanding these orders or the fact that neither Dyck-O'Neal nor Ramco were parties to the Avoidance

---

[4] The Debtor and Yumi are not *creditors* of this estate and, for the reasons set forth in Judge Shefferly's Order Denying Debtor's Motion to Intervene (Adv. No. 20-4366, Docket No. 46), have no interest in the Muirland Property. Their views about this settlement, therefore, are not entitled to the deference afforded to creditors. *Bard*, 49 Fed. Appx. at 530. *See*, Section C., *infra*.

Adversary Proceeding, Yumi filed and served them with interrogatories and requests for production in the Avoidance Adversary Proceeding. (Adv. Pro. No. 18-4356, Docket Nos. 240 and 241.)

The instant settlement was proposed with the expectation that it would permit the Trustee to make an estimated 55% distribution on claims. (Docket No. 156, Exhibit A, Trustee Declaration). The pro-rata payment on creditor claims from the proposed settlement will serve creditors better than continued collection efforts. And, if the creditors wish to pursue further collection, they may do so as the Debtor's discharge was denied. (Docket No. 137). For these reasons, this Court finds that it is in the best interest of creditors to settle this matter as the settlement will result in a more expeditious recovery of funds for distribution to them.

In summary, the Court finds that the settlement proposed by the Trustee falls well within the perimeters of the business judgment rule and should be approved.

B. Motion to Sell Property

The second part of the Trustee's motion seeks approval for the sale of the Muirland Property as part of this settlement. A trustee has the power to sell property of the estate. 11 U.S.C. § 363(b). All sales not in the ordinary course of business may be by private sale or by public auction. Fed. R. Bankr. P. 6004(f). The Sixth Circuit follows the sound business purpose test in considering a sale of a debtor's assets outside the ordinary course of business. Factors commonly considered

include (1) whether adequate and reasonable notice of the sale was provided to interested parties; (2) whether the sale has been proposed in good faith; and (3) whether the purchase price is fair and reasonable. *In re Barnhill's Buffet, Inc.*, No. 07-08948, 2008 WL 4527829 (Bankr. M.D. Tenn. Feb. 28, 2008) (*citing Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 388 (6th Cir. 1986)). No one factor is determinative. *Stephens Indus.*, 789 F.2d at 389 *citing In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983) (court should consider all salient factors pertaining to the sale).

The Court finds that the Trustee's proposed sale meets the sound business purpose test. The sale is an integral part of this settlement and, through the Trustee's Motion, the sale of the Muirland Property has been adequately and reasonably noticed. Moreover, for the reasons discussed in Section A., *supra*, the Court finds that the sale has been proposed in good faith. The Court also finds that the purchase price is fair and reasonable under the circumstances. If the Trustee is to sell the Muirland Property to an individual or entity other than Amerisave, the Trustee must first successfully obtain a judgment against Amerisave. The sale price of $150,000 is 75% of the amount of the Trustee's $200,000 judgment against Yumi and, as previously discussed, avoids the considerable costs of litigation and collection -- those involving Amerisave, as well as those involving the Debtor and Yumi -- and similarly avoids all fees and closing costs associated with marketing and selling the

Muirland Property. These considerable costs will now be borne entirely by Amerisave. Even in the unlikely event that the Muirland Property could be sold for more than $150,000, anything over this amount would inure to the benefit of Amerisave only, if the Amerisave mortgage is subordinated, or to creditors only, if the Amerisave mortgage is voided. Importantly, no creditors have objected to the proposed settlement and sale. It is the creditors' "paramount interest . . . and a proper deference to their reasonable views," *Bard*, 49 Fed. Appx. at 530, that must guide the Court.

Because the Court finds that the Trustee has met the sound business purpose test, the sale is approved as an integral part of the compromise.

## C. Debtor's and Yumi's Objections

The Debtor and Yumi raise numerous objections to the compromise and sale. To have standing to object to a settlement agreement, however, the challenging party must have a pecuniary interest in the settlement. *Zipkin Whiting Co. v. Barr (In re Felix)*, 825 Fed.Appx. 365 (6th Cir. 2020) (party must have pecuniary interest in settlement to object to settlement); *Khan v. Regions Bank (In re Khan)*, 544 Fed. Appx. 617, 619 (6th Cir. 2013) ("It is unusual for a Chapter 7 debtor to have a pecuniary interest 'because no matter how the estate's assets are disbursed by the trustee, no assets will revert to the debtor'"); *Nangle v. Surratt (In re Nangle)*, 288 B.R. 213, 215-16 (8th Cir. 2003) (the pecuniary interest rule limits standing to

persons with a financial stake in the bankruptcy court's order). In this case, neither Debtor nor Yumi have alleged a pecuniary interest in the Muirland Property beyond the issues concerning title and the validity of the judgment – both issues which have been resolved by this Court in the Trustee's favor and are on appeal. More importantly, Judge Shefferly already ruled that neither the Debtor nor Yumi have any interest -- pecuniary or otherwise -- in the Muirland Property, much less a substantial or significant legal interest as required for intervention under Fed. R. Bankr. P. 7024. *Order Denying Debtor's Motion to Intervene* (Adv. No. 20-4366, Docket No. 46). Judge Shefferly's order is now law of the case. *Burley v. Gagacki*, 834 F.3d 606, 618 (6th Cir. 2016). For this reason, neither Debtor nor Yumi have standing to raise any objections to this settlement.

Even assuming, however, that Debtor and Yumi have some cognizable interest in the Muirland Property, the Court overrules their objections for the following reasons.

First, Debtor and Yumi allege that the settlement will have an adverse effect on their interest in the Muirland Property and on the amount of the Trustee's judgment against Yumi. This Court has already ruled that the Muirland Property is property of the bankruptcy estate. (Avoidance Adversary, Adv. No. 18-4356, Docket No. 166). This Court has also ruled on the judgment, setting the amount of the judgment against Yumi at $200,000. (Avoidance Adversary, Adv. No. 18-4356,

15

Docket No. 284). These matters are currently on appeal in the Avoidance Adversary. No stay pending appeal has been requested or obtained. Having already decided these issues, the Court denies any objections based on the ownership of the Muirland Property or the amount of the judgment against Yumi.

Second, Debtor and Yumi argue that the compromise "interferes with and frustrates the mortgage contract" between Yumi and Amerisave and "the proposed transfer of the title to the Muirland Property from the trustee to Amerisave de facto unlawfully changes the legal character of . . . Yumi Yoo's contractual relationship with Amerisave from mortgagor and mortgagee to landlord and tenant." This is untrue because Court finds that the relationship between Yumi and Amerisave remains intact. As correctly stated by the Trustee, "[T]he settlement leaves the mortgage intact without adjustment; thus, Yumi is still the mortgagor and Amerisave is still the mortgagee under the Mortgage. Yumi has no ownership interest in the real property now (it is owned by the estate) and will have no ownership interest in the property if the settlement is approved (it will be owned by Amerisave)." (Docket No. 156, pp. 9-10)

Third, the Debtor and Yumi argue that it is improper for the Trustee to use "worthless" estate property to settle a lawsuit. It is unclear how this argument furthers the interests of the Debtor and Yumi. This Court referred to the Muirland Property as worthless because, during the course of the bankruptcy case, the Debtor

and/or Yumi bled the Muirland Property of its equity. While, on the petition date, the Debtor had at least $200,000 of equity in the property which could have been used to pay Debtor's creditors, by the time the Muirland Property was brought in as an asset of the estate, the Debtor and Yumi had mortgaged the property to Amerisave so that there was no remaining equity. The removal of Amerisave's mortgage on the Muirland Property would replenish the value in the Muirland Property which the Debtor and/or Yumi previously bled out of the estate. The Trustee intends to monetize this value through this settlement with Amerisave which he is statutorily obligated to do. 11 U.S.C. §704(a).

Fourth, the Debtor and Yumi argue that the $200,000 amended judgment the Trustee obtained against Yumi must be quashed and set aside because the $150,000 that Amerisave will pay to the Trustee is more than enough to pay the $111,000 creditor claims and compensate the Trustee and that, if the judgment is not quashed, then the Trustee will be "double-dipping" on the collection of Yumi's judgment.

The Court finds that it is improper to quash or set aside the $200,000 judgment against Yumi, and the Trustee is not "double-dipping". The Trustee is selling the Muirland Property as a way of recouping amounts owing on the judgment. The amount recovered by virtue of this settlement/sale is in lieu of the recovery of the Muirland Property and will be credited against the Trustee's judgment against Yumi. Specifically, upon approval of the settlement and receipt of the funds, the Trustee's

judgment against Yumi will be reduced by $150,000, leaving a judgment balance of $50,000 plus interest due and owing by Yumi to the Trustee.

Fifth, the Debtor and Yumi argue that the compromise does not state that the $150,000 that the Trustee will receive in exchange for the Muirland Property must be used to pay the creditor claims and close the bankruptcy case. The $150,000 must also be used to pay costs of administration as well as creditor claims as specified in the Bankruptcy Code. Wording specifying this distribution scheme need not be included in the order because the procedure for the distribution of proceeds by the Trustee is set forth by statute.

Sixth, as to the Debtor and Yumi's request for the closing of the case, the Court notes that the closure of bankruptcy cases is governed by Bankruptcy Code § 350 which states:

> After an estate is fully administered and the court has discharged the trustee, the court shall close the case.

The procedure for closing a case begins once all assets have been liquidated and claims are paid. Then, the Trustee files a Final Report with the Court. Unless any party objects to the Final Report, the Court will then issue a Final Decree, and the Clerk of the Court will close the case. In this case, the Trustee has not yet marshalled all the assets and paid the claims nor has the Trustee filed a Final Report. For this reason, this Court finds that it is not appropriate for it to issue an order closing this case at this time.

Finally, during the lengthy hearing on the Motion, Debtor reiterated his willingness to pay only what, in his view, are the *legitimate* claims of creditors, asserting that this outcome was only prevented by the fraud, misconduct and racism of the Trustee and his counsel, among other *ad hominum* attacks. Debtor's comments revealed, among other things, that he was unaware that the fees of Trustee's counsel are paid out of the liquidation of estate assets and not by creditors directly and, as previously noted, those fees are now considerable. Because Debtor's alleged willingness to pay creditor claims did not include payment of all allowed administrative expenses, it is incomplete and, given the current posture of this case, statutorily unacceptable. More importantly, all of Debtor's claims and accusations have been previously addressed at length by Judge Shefferly, including Debtor's so-called willingness to cash out creditor claims to end this case. By way of example, in his Opinion Denying [Debtor's] Motion to Require Trustee to Accept Debtor's Payment of Claims and Costs (Adv. No. 18-4356, Docket No. 141), Judge Shefferly explained at length why Debtor's proposed path out of this case did not work.

> In the Motion, the Debtor and the Defendant now ask the Court to order the Trustee to accept a settlement of this adversary proceeding. But there's a catch. They don't actually make a settlement offer. Instead, they ask the Court to order the Trustee to give them an accounting of the proofs of claims in the Debtor's bankruptcy case and the costs of administration of the bankruptcy case. Then they will make a settlement offer to the Trustee. That is not how Chapter 7 works.

*Id*. at p.6.

Rather, Judge Shefferly again explained what Debtor needed to do to globally settle this bankruptcy case and, again, begged Debtor to consider his oft-repeated recommendations.

> If the Defendant and the Debtor want to settle this [Avoidance] adversary proceeding, they can. And should. This adversary proceeding cries out for a settlement – the Muirland Property that is at the center of this adversary proceeding is the family home. That's why the Court has twice sent this matter to mediation. The way for the Debtor and the Defendant to settle this adversary proceeding is to make a concrete settlement offer to the Trustee and engage in good faith settlement discussions based on an analysis of all the risks and rewards to all parties if the litigation continues to a conclusion. Frankly, the Debtor and Defendant would be best served by hiring a lawyer to assist them in this process. The Court has told them that countless times. They choose not to, and the Court cannot force them to. But the Court also cannot force the Trustee to "accept" a settlement of a fraudulent transfer adversary proceeding against a debtor's non-filing spouse on terms dictated by the debtor.

*Id*. at pp. 6-7.

Debtor and Yumi did not accept Judge Shefferly's recommendations, as was their right. However, judgments and orders have now been entered and those judgments and orders are on appeal. This Court cannot unring the bell. Debtor's argument must be rejected.

## IV.

## CONCLUSION

This Court finds that neither the Debtor nor Yumi have standing to object to this Motion. Even if the Debtor and Yumi have standing to object, neither can meet

their burden of establishing that the Trustee's decision lacked a rational purpose or that the Trustee's decision was otherwise irrationally conceived. The proposed settlement is "fair and reasonable" because it will provide a significant distribution to creditors in a cost-effective and efficient manner while avoiding the considerable costs of continued litigation. Accordingly, this Court GRANTS the Trustee's Motion to Approve Compromise and for Sale of Real Property.

**Signed on May 10, 2021**



/s/ Joel D. Applebaum
**Joel D. Applebaum**
**United States Bankruptcy Judge**