UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In Re:

LaJeff Lee-Percy Woodberry,   Case No. 18-46856-jad
                              Chapter 7
   Debtor.                    Hon. Joel D. Applebaum
_____/

# OPINION GRANTING C&W FINANCIAL CONSULTING'S FIRST AND FINAL FEE APPLICATION FOR THE PERIOD NOVEMBER 12, 2020 THROUGH NOVEMBER 18, 2020

The matter before the Court is C&W Financial Consulting's ("C&W Financial") First and Final Fee Application seeking $1,750 for the period from November 12, 2020 to November 18, 2020. For the reasons set forth in this Opinion, the Objections raised by Debtor and Yumi Yoo Woodberry ("Yumi") are overruled, and the C&W Financial's Fee Application is GRANTED.

I.

FACTUAL BACKGROUND

The facts of this case are set forth in great detail in this Court's Opinion Granting the First Interim Fee Application of Counsel for Trustee for the Period June 8, 2018 through May 21, 2021 (Fee Opinion Regarding Trustee's Counsel) issued on this date.

The facts that specifically concern C&W Financial are as follows:

On May 9, 2018, Debtor filed for chapter 7 bankruptcy.

On August 2, 2018, the Trustee filed a Complaint to Avoid and Recover Fraudulent Transfers. (Adv. No. 18-4356). In that thirty-count complaint, the Trustee alleged that Debtor had fraudulently transferred numerous assets to Yumi including Debtor's interest in the Muirland Property (the subject of significant litigation in this bankruptcy case) and Debtor's membership interest in Family First, LLC, a hair and nail salon with at least two Metro Detroit locations.

On November 19, 2020, the Court approved the retention of C&W Financial for the purposes of valuing Family First in order to establish the insolvency element of Trustee's case, to act as an expert witness, and to determine the current value of Family First for liquidation purposes, if the Trustee were successful in recovering Debtor's membership interest in Family First for the estate.

On May 25, 2021, C&W Financial filed its first and final fee application seeking $1,750 for the period from November 12, 2020 to November 18, 2020. In paragraph 3 of its fee application, C&W summarizes its services:

> 3. Summary of services rendered. The Trustee filed an adversary proceeding to avoid and recover transfers made by the Debtor to his wife, including the transfer of his membership interest in Family First LLC, a hair and nail salon with at least two Metro Detroit locations (adversary proceeding 18-04356). The Trustee retained C&W Financial to value Family First for the purposes of establishing the insolvency element of his case; to act as an expert witness; and, if the Trustee recovered the membership interest in Family First for the estate, to

2

determine its current value for liquidation purposes. To begin its assessment, C&W Financial examined the financial documentation of Family First LLC that was provided by the Trustee and supplied the Trustee with a comprehensive list of additional information needed to determine the value of Family First LLC. The Trustee issued a subpoena to Family First LLC, but no documentation was ever provided. Based on the inordinate and excessive litigation costs that the estate was incurring in the case, the Trustee ultimately chose to dismiss those Counts of the complaint that required C&W Financial's services.

In Exhibit 4 attached to the fee application, the amount billed is broken down by task:

| Attorney | Hourly Rate | No. of Hours | Amount |
|---|---|---|---|
| Christine Hoppe | 350.00 | 5.00 | $1,750.00 |
| Totals | | 5.00 | $1,750.00 |

| Professional Services | | Hrs/Rate | Amt |
|---|---|---|---|
| 11/12/2020 – CLH | Review<br>Discussion with RLW: Correspondence with counsel; Review and updates to application of employment | .8<br>350/hr | $280 |
| 11/18/2020 – CLH | Review<br>Review documents and general ledgers | 4.2<br>350/hr | $1,470 |
| For professional services rendered | | 5.00 | $1,750 |
| Balance due | | | $1,750 |

On June 21, 2021, Debtor and Yumi objected to C&W Financial's fee application on three grounds: (1) C&W Financial's fee application requests amounts in excess of the statutory percentage limits for fees mandated by 11 U.S.C. § 326(a);

3

(2) the Trustee did not have jurisdiction over Family First because it is neither a debtor nor a defendant; and (3) the fees were not necessary or reasonable under 11 U.S.C. § 330(a)(A) because (a) the work completed by C&W Financial was prohibited by the Michigan Limited Liability Act, (b) the chapter 7 Trustee knew before employing C&W Financial that Family First was valueless, and (c) the Trustee unreasonably rejected the Debtor's offer to pay the creditor claims in full and in cash.

The Court does not believe oral argument is necessary because it will not assist it in making its decision. As a result, this matter was not scheduled for oral argument.

III.

LAW AND ANALYSIS

11 U.S.C. § 330 sets forth the standard for evaluating applications for fees to be paid from the assets of the bankruptcy estate. Section 330(a) states, in part:

(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, an examiner, a professional person employed under section 327 or 1103 –

(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any para-professional personal employed by any such person; and

(B) reimbursement for actual, necessary expenses.

4

(2) The court may, on its own motion or on the motion of the United States Trustee, the United States Trustee for the District or Region, the trustee for the estate, or any other party in interest, award compensation that is less than the amount of compensation that is requested.

(3) In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant facts, including

   (A) the time spent on such services;

   (B) the rates charged for such services;

   (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title . . .

(4)(A) Except as provided in subparagraph (B), the court shall not allow compensation for –

   (i) unnecessary duplication of services; or

   (ii) services that were not –

      (I) reasonably likely to benefit the debtor's estate; or

      (II) necessary to the administration of the case.

\* \* \*

In the Sixth Circuit, if it is determined that a professional person is entitled to fees under 11 U.S.C. § 330, the lodestar method is used for calculating the amount of the fees. *In re Boddy*, 950 F.2d 334, 337 (6th Cir. 1991). The lodestar amount is

calculated by multiplying the professional's reasonable hourly rate by the number of hours reasonably expended. *Id*. at 337.

Pursuant to § 330(a)(2) and case law, a court has the duty to review all fee applications, regardless of whether an objection has been filed, in order to protect the assets of the estate for the benefit of the creditors. *In re Bush*, 131 B.R. 364, 365 (Bankr. W.D. Mich. 1991). It is particularly important for courts to evaluate fee applications where there is no incentive for the debtor to limit fees. *In re Copeland*, 154 B.R. 693, 697 (Bankr. W.D. Mich. 1993). The burden of proof is on the applicant to justify the requested fees. *In re Hamilton Hardware Co., Inc.*, 11 B.R. 326 (Bankr. E.D. Mich. 1981); *Zolfo, Cooper & Co. v. Sunbeam-Oster Company, Inc.*, 50 F.3d 253, 261 (3d Cir. 1995)(in evaluating fee applications, "[t]he fee applicant has the burden of proving it has earned the fees it requests, and that the fees are reasonable.")

In this case, C&W Financial seeks fees for professional services in the modest amount of $1,750. The Court has independently reviewed C&W Financial's fee application as it is required to do and has determined that the fees were "reasonable expenses for actual, necessary services" under 11 U.S.C. §§ 330, 331. Specifically, C&W Financial was retained by the Trustee to assist the Trustee in the Trustee's adversary proceeding to avoid and recover transfers made by Debtor to his wife, including the transfer of his membership interest in Family First. (Adv. No. 18-

4356). C&W Financial had the professional expertise to perform this work. To begin its assessment, C&W Financial examined the financial documentation of Family First provided to it by the Trustee. C&W Financial then generated a comprehensive list of additional information it needed to complete its valuation. Based on this information, the Trustee issued a subpoena to Family First, seeking to obtain the necessary documentation. No documents were ever provided. The Trustee ultimately chose to dismiss those Counts of the complaint that required C&W Financial's expertise. Even so, the bankruptcy eve transfers by Debtor and the failure of Debtor and Yumi to be entirely forthcoming necessitated C&W Financial's employment in the fraudulent transfer action. Therefore, the work performed analyzing the documents provided by the Trustee was necessary, and the Court finds that the number of hours worked by the C&W Financial was reasonable.[1]

The Debtor and Yumi object to the C&W Financial's fees on three grounds. First, the Debtor and Yumi argue that the fee application filed by C&W Financial must be disallowed because the amount it seeks substantially exceeds the statutory limits imposed by 11 U.S.C. § 326(a). Specifically, the Debtor and Yumi argue that the $1,750 is excessive and exceeds the statutory percentage limits set forth in 11

---

[1] Neither Debtor nor Yumi objected to C&W Financial's hourly rate and the Court independently finds that the hourly rate charged by C&W Financial to be reasonable.

U.S.C. § 326(a) when taken in conjunction with $60,000 reimbursement for the chapter 7 Trustee's counsel. Therefore, the requested fees must be disallowed.

As discussed in considerable detail in the Fee Opinion Regarding Trustee's Counsel, the Court rejects this argument because § 326(a) concerns fees requested by the chapter 7 or 11 *trustee* and does not apply to professionals retained by the Trustee. For this reason, this objection is overruled.

Second, Debtor and Yumi argue that the Trustee does not have jurisdiction over Family First because it is neither a debtor nor a defendant and, therefore, fees incurred in investigating Family First are not appropriate bankruptcy fees. This argument is frivolous. A trustee is certainly permitted to investigate fraudulent transfers, including, as necessary, compiling and reviewing business records, performing forensic accounting, and garnering expert opinions, among other things. In this case, Debtor's limited partnership interests in Family First, LLC were transferred for questionable consideration. The Trustee had an obligation under the Bankruptcy Code and State fraudulent transfer law to determine whether those membership interests were valuable, and whether Debtor had received, or was entitled to receive, any distributions from Family First. For this reason, this objection is overruled as well.

Third, Debtor and Yumi argue that the fees requested are not "reasonable compensation for actual, necessary services" as required under § 330. Specifically,

Debtor and Yumi argue that the fees were not necessary or reasonable on the grounds that (a) the work completed by C&W Financial was prohibited by the Michigan Limited Liability Act, MCL 450.4507, (b) the chapter 7 Trustee knew before employing C&W Financial that Family First was valueless, and (c) the Trustee unreasonably rejected the Debtor's offer to pay the creditor claims in full and in cash.

These arguments are equally without merit. Nothing in the Michigan Limited Liability Act prevents the Trustee from performing his obligations under the Bankruptcy Code and applicable State law to investigate potentially fraudulent transfers and to take appropriate action if he concludes that fraudulent transfers, in fact, occurred.

Debtor and Yumi also argue that C&W Financial's employment was not necessary because the Trustee knew that the Debtor never received a distribution from Family First and because the Trustee knew that Family First was valueless. Debtor states that he informed the Trustee at the first meeting of creditors that creditor Ramco Gershenson, LP had seized all of Family First's assets, resulting in a loss to the Debtor. The Trustee, however, is not required to take Debtor's word for it and is entitled to independently verify Debtor's assertions. In this case, the Trustee was already on notice that Debtor was not forthright when disclosing his assets, having transferred his largest asset to his spouse shortly before the bankruptcy

was filed. Based upon C&W Financial's work, the Trustee quickly concluded that pursuing the Family First claims was not economically worthwhile and those counts of the adversary complaint were dismissed. Consequently, the Trustee acted reasonably and well-within his business judgment by hiring C&W Financial to investigate the value of Debtor's interest in Family First.

Debtor and Yumi also argue that C&W Financial's employment was unnecessary because the chapter 7 trustee obtained the entry of an order dismissing the Family First counts shortly after obtaining the order authorizing employment of C&W Financial. This argument misses the point. The Trustee had the right to investigate the scope of the Debtor's assets and he was well-within his rights to retain C&W Financial to assist in this effort. Based upon C&W Financial's work, the Trustee ultimately determined that it was not prudent to pursue the transfer of Debtor's Family First membership interests when weighing any potential recovery against the costs of collection. The fact that the Trustee decided not to pursue the Debtor's interest in Family First does not render C&W Financial's services unnecessary or non-compensable. It was because of C&W Financial's work that the Trustee was able to make this business judgment.

Finally, Debtor and Yumi argue that the Trustee should have never employed C&W Financial because Debtor had made several offers to pay the creditors' claims in full and in cash, which the Trustee unreasonably refused to accept. Debtor and

Yumi have made this argument multiple times in the past. Most recently, Debtor and Yumi raised this argument in their objection to the fee application of Trustee's counsel. For the reasons explained in detail in the Fee Opinion Regarding Trustee's Counsel, this argument is based upon false assumptions and is overruled.

IV.

CONCLUSION

As it is required to do, the Court has conducted a thorough, independent review of the fee application and has determined that the fees requested by C&W Financial Consulting meet the standards set forth in 11 U.S.C. § 330 and § 331. Debtor's and Yumi's objections are, therefore, overruled and the First and Final Fee Application of C&W Financial Consulting for the Period November 12, 2020 through November 18, 2020 is GRANTED in the amount of $1,750.

**Signed on July 23, 2021**

/s/ Joel D. Applebaum
**Joel D. Applebaum**
**United States Bankruptcy Judge**